IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HARRISON ALSTON, | ) | |
| Plaintiff, | ) | C.A. No. 05-168 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| DEBRA FORSYTH, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 64] be granted.

**II.    REPORT**

    **A.     Relevant Procedural History**

On May 27, 2005, Plaintiff William Harrison Alston, an inmate formerly incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed a *pro se* civil rights Complaint pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Named as Defendants are: Debra Forsyth, Chairperson of FCI-McKean's Safety and Health Committee ("Forsyth"); Marty Sapko, UNICOR/Industry Factory Manager at FCI-McKean ("Sapko"); Stephen Housler, Safety Manager at FCI-McKean ("Housler"); and James Perrotti, UNICOR/Industry Shop Foreman at FCI-McKean ("Perrotti").

In his Complaint, Plaintiff claims that Defendants: (i) were deliberately indifferent to his safety and subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights; and (ii) violated his due process rights under the Fifth Amendment. As relief, Plaintiff seeks monetary damages.

On September 11, 2007, Defendants filed a motion to dismiss [Document # 38] claiming that: (i) Plaintiff's claims are barred by the applicable two-year statute of limitations, or, in the alternative; (ii) the identical claims raised by Plaintiff have already been litigated and finally

resolved in favor of Defendants in five substantially similar cases previously filed with this Court (hereinafter collectively referred to as "silica dust cases").[1] On April 7, 2008, this Court issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted for either or both of the reasons asserted by Defendants. [Document # 45]. Plaintiff filed objections to this recommendation and, on June 5, 2008, District Judge Sean J. McLaughlin issued a Memorandum Order refusing to adopt this Court's Report and Recommendation and denying Defendants' motion to dismiss, "without prejudice to Defendants' right to contest the timeliness of Plaintiff's claims on a more fully developed record." [Document # 47].

The parties have since completed discovery and Defendants have filed a motion for summary judgment, once again claiming that Plaintiff's claims are barred by the applicable two-year statute of limitations. [Document # 64]. Plaintiff has filed a brief in opposition to Defendants' summary judgment motion [Document # 67], and Defendants have filed a reply brief, in which they raise the additional argument that this case must now be dismissed based upon the Third Circuit Court's recent opinion affirming Judge McLaughlin's dismissal of the five previous silica dust cases. Ward v. LaManna, 07-2024 (3d Cir. 2009). [Document # 68]. This matter is now ripe for consideration.

**B.     Relevant Factual History**

From early March 6, 2001 to March 22, 2002, Plaintiff was assigned to work in FCI-McKean's UNICOR factory. (See Plaintiff's Work History Report attached as Exhibit 3 to Document # 65). Plaintiff was assigned to operate the large panel saw, which was used to cut Micore board. (See William Alston deposition transcript attached as Exhibit 4 to Document # 65, at p. 4). Plaintiff has alleged that, "throughout [his] assignment to the FCI McKean Unicor,

---

[1] The previous five cases finally decided by this Court were Michael Hill v. LaManna, C.A. No. 03-323 (W.D. Pa.); Leslie Kelly v. LaManna, C.A. No. 03-368 (W.D. Pa.); Kevin Siggers v. LaManna, C.A. No. 03-355 (W.D. Pa.); Myron Ward v. LaManna, C.A. No. 04-11 (W.D. Pa.); and Kenny Hill v. LaManna, C.A. No. 05-160 (W.D. Pa.).

defendants instructed and allowed [him] to work with and around areas where tac-boards 'a.k.a' Micore and Spec-boards are cut, sawed, sanded, machined, touched, stacked, and otherwise handled by plaintiff." (Complaint at ¶ 14). Plaintiff alleges further that he was "instructed and allowed to blow the floor around machines where Micore boards ha[d] been cut, sawed, sanded and otherwise machined, with air hoses," which he also used to "blow machines off." (Id.).

Plaintiff asserts that the UNICOR factory's exhaust and ventilation systems were "very poor and out of compliance for the machining, sawing, sanding, blowing, sweeping, cutting and fanning of Micore boards and its dust." (Id.). Plaintiff asserts further that the only protection provided to him by Defendants was a breathe-easy dust mask, which "[did] not protect against silica, toxic or hazardous air contaminants, other toxic dust, industrial dust, or harmful vapors." (Id.). Plaintiff also claims that he "was subjected to fumes and vapors which caused him to inhale Lockweld 0861 contact adhesive," which was "seeping into the poorly ventilated atmosphere within the FCI McKean UNICOR facility." (Complaint at ¶ 15).

According to Plaintiff, early in his assignment at UNICOR, he asked Defendant Perrotti if he needed a better mask or more protection from the dust and fumes in the UNICOR facility, to which Perrotti allegedly responded, "No, you're fine." (See Alston deposition attached as Exhibit 4 to Document # 65, at pp. 14-16). Plaintiff again asked Defendant Perrotti the same question at a later time during his Unicor assignment, and received the same response. (Id. at pp. 18-20).

On July 3, 2001, Defendant Housler received a letter from the Area Director of the Occupational Safety and Health Administration ("OSHA") advising him that OSHA had received a notice of safety hazards regarding the ventilation system in the UNICOR factory. (See Housler deposition transcript attached as Exhibit 6 to Document # 65, at p. 32). As a result, OSHA requested that FCI-McKean investigate the alleged conditions and make any necessary corrections or modifications. (See OSHA letter attached as Exhibit 5 to Document # 65). In response to the OSHA letter, FCI McKean contracted with Microbac Laboratories, Inc. to conduct an indoor air quality survey of the UNICOR facility. Microbac tested six different sites in the factory, including the large panel saw that was operated by Plaintiff, and

3

found that all of the sites complied with OSHA air quality standards. (See Microbac survey results attached as Exhibit 7 to Document # 65).

On or about October 27, 2001, Plaintiff underwent a chest x-ray, which revealed a spot on his right lung. (See Alston deposition transcript attached as Exhibit 4 to Document # 65, at pp. 24-25 and deposition exhibit A). A subsequent CT scan conducted in March 2002, however, revealed that the lung nodule was no longer present. (Id. at p. 26 and deposition exhibit A).[2] Soon after, on March 22, 2002, Plaintiff was transferred from FCI-McKean to FCI-Petersburg, Virginia. (See Exhibit 2 attached to Document # 65).

Plaintiff claims that, after being transferred to FCI-Petersburg, he learned, for the first time, that Micore boards contain "silica sand and mineral fiber," and create "respirable dust containing crystalline silica," which is a "potential occupational carcinogen." (Complaint at ¶ 14). Plaintiff claims further that he first began experiencing symptoms that he now alleges were caused by his exposure to Micore board dust and Lockweld fumes, in "late 2003, early 2004," well after his transfer to FCI-Petersburg. (See Alston deposition transcript attached as Exhibit 4 to Document # 65, at pp. 22-23).

### C. Standards of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

---

[2] In his Complaint, Plaintiff mistakenly alleges that in or around March 2002, "a spot was found on [his] lung through a Cat Scan." (Complaint at ¶ 13).

a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury

5

could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion
#### 1. Statute of Limitations

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions.  However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Samerica Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted).  In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police

Dept., 91 F.3d 451 (3d Cir. 1996).

When the date on which the cause of action accrued is at issue, however, the courts must apply federal law, which provides that a section 1983 claim accrues "when the plaintiff is aware, or should be aware, of the existence and source of the injury." Oshiver v. Levin, Fishbein, Sedram, & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994). This is known as the discovery rule, permitting the accrual date of the statute of limitations to begin when the plaintiff has discovered, or by exercising reasonable diligence, should have discovered, the injury or that the injury has been caused by another party's conduct. Id. Importantly, the claim accrues at the awareness of the injury itself, and not the awareness that the injury creates a legal cause of action. Id. "The plaintiff need not know the exact medical cause of the injury, that his injury is due to another's negligent conduct, or that he has a cause of action." Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991). The "polestar" of the discovery rule is not the plaintiff's actual knowledge, but rather "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." Id. at 924(citations omitted).

Here, Defendants acknowledge that "[b]ased upon [the] wealth of conflicting evidence... it is almost impossible to specifically pinpoint a date upon which [Plaintiff] should have had enough facts to recognize a claim existed." (Document # 65, Defendants' Brief, at p. 8). Nonetheless, Defendants proceed to argue that, "[a]t the time of his transfer on March 22, 2002 (if not earlier,) Plaintiff clearly knew or should have known all the facts necessary to support his claims." (Id. at p. 9). This argument is based upon a number of circumstantial factors Defendants have gleaned from the record. Two of these factors are health-related: (i) Plaintiff "had experienced some degree of dyspnea on exertion and chronic cough;" and (ii) Plaintiff "was informed that a 'spot' had been found on his lung." (Id.).

As support for the first health-related factor, Defendants point to a report from the National Institute of Health ("NIH"), dated December 12, 2008, which indicates that Plaintiff developed "dyspnea on exertion and chronic cough beginning in March 2001." (See Exhibit 8 attached to Document # 65, at p. 1). Defendants rely on this report to argue that Plaintiff "was already concerned about his health" as far back as March 2001; however, Plaintiff has disputed

7

the accuracy of the report, stating that "his doctor mistakenly entered plaintiff's starting date of employment in UNICOR as the date his injuries developed." (Document # 67, Plaintiff's Brief, at p. 2). In fact, Dr. Hnatiuk, who authored the report, subsequently wrote a memorandum acknowledging the mistake and confirming that Plaintiff's medical records indicate that he "was first medically evaluated for shortness of breath in 2004." (See Exhibit 3 attached to Document # 67, Plaintiff's Brief). Thus, the NIH report, as supplemented by Dr. Hnatiuk's memorandum, actually favors Plaintiff's argument that he did not become aware of his claims until after his transfer on March 22, 2002.

With regard to the second health-related factor cited by Defendants, while it is true that a chest x-ray in October 2001 revealed a spot on Plaintiff's lung, a subsequent CT scan conducted in March 2002 showed no evidence of a lung nodule, pleural fluid, or thickening. Plaintiff testified at his deposition that, because the second test was clear, he did not have any concerns that the spot on his lung was caused by his work as a panel saw operator. (Alston deposition transcript attached as Exhibit 4 to Document # 65, at p. 31). Thus, at the very least, there is a genuine issue of material fact as to whether the discovery of a spot on his lung in October 2001, would, or should, have put Plaintiff on notice of a possible claim against Defendants arising from his work at the UNICOR factory.

The other three factors cited by Defendants in support of their claim that Plaintiff was aware of enough facts to recognize a claim existed prior to his transfer on March 22, 2002, are that he: (i) had been advised of the MSDS sheets, and provided opportunities to review them; (ii) was provided with an opportunity to review the letter from OSHA indicating that there was a problem with the air quality in the factory; and (iii) witnessed a full day of air quality testing in his work area. (Document # 65, Defendants' Brief, at p. 9). However, there is no indication in the record that Plaintiff actually reviewed the MSDS sheets or the OSHA letter, and Plaintiff testified that he did not recall the air quality testing that was conducted by Microbac at the UNICOR facility. (Alston deposition transcript attached as Exhibit 4 to Document # 65, at pp. 42-43). This Court is unwilling to impute knowledge, or even constructive knowledge, to Plaintiff upon a record that, in Defendants' own words, consists of a "wealth of conflicting

evidence." Accordingly, Defendants motion for summary judgment, based upon Plaintiff's alleged failure to comply with the applicable statute of limitations, should be denied.

### 2.     Controlling Precedent

Alternatively, Defendants contend that Plaintiff's complaint should be dismissed because the nearly identical factual and legal bases cited by Plaintiff have now been resolved by the Court of Appeals for the Third Circuit in favor of the Defendants in the consolidated appeal of the five silica dust cases previously dismissed by District Judge McLaughlin. See Ward v. LaManna, 2009 WL 1652396 (3d Cir. June 15, 2009). In Ward, the Third Circuit Court held that there was no evidence to support the conclusion that FCI-McKean's prison staff was aware of an unreasonable risk of harm to inmates working in the UNICOR factory during the same time period Plaintiff was employed there. As a result, the Circuit Court concluded that the subjective prong of the deliberate indifference standard could not be met. In particular, the Circuit Court held as follows:

> There is no evidence to support a reasonable inference that the prison staff was aware of an unreasonable risk. First, deposition testimony of the staff members indicates that they were not aware of an unreasonable risk. Second, there was no formalized environmental or health hazard training for staff as well as inmates, which underscores staff's lack of awareness. The factory's safety officer, Stephen Housler, never received any specific Micore Board or Lokweld Glue training, and, for the most part, the prison officials were unfamiliar with the information on the Material Safety Data Sheet. Third, the two inspections involving OSHA during the inmates' tenure at the factory do not reflect deliberate indifference by the prison officials. The results of the 2001 and 2003 tests showed the prison officials that the factory's air quality, which encompassed the amount of Micore dust containing silica and other harmful chemicals in the air, was within acceptable OSHA regulatory levels. In 2003, there were no "Serious" OSHA violations pertaining to air quality and the factory had a large-scale dust collection system. When viewed most generously, these facts only document behavior that indicates possible negligence or carelessness.
>
> Any showing of deliberate indifference also is foreclosed by the remedial measures staff took in responding to the 2003 OSHA recommendations and violations. The prison corrected all the recommendations and violations within OSHA's required time frame, which undermines the requirement of "disregard."

Ward, 2009 WL 1652396 at * 3 (internal citations and footnotes omitted).

9

This Court previously recommended that Plaintiff's complaint be dismissed based upon District Judge McLaughlin's prior dismissal of the five silica dust cases; however, Judge McLaughlin was unwilling to adopt this recommendation at the pleading stage, finding that Plaintiff was not a party to the prior cases and, thus, had not had a full and fair opportunity to litigate his claims. (Document # 47 at p. 3). Now that Plaintiff has had a full and fair opportunity to gather and present evidence in support of his claims, it is clear that Plaintiff is unable to present anything new for this Court to consider. The evidence of record in this case is substantially similar, if not identical, to the evidence that was presented on behalf of the parties in the five prior silica dust cases. As the Third Circuit has confirmed in Ward, this evidence is insufficient to satisfy the subjective prong of the Eighth Amendment's deliberate indifference standard. As a result, summary judgment should be granted in favor of Defendants and this case should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 64] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  October 14, 2009

cc:     The Honorable Sean J. McLaughlin
        United States District Judge